DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**D.J.D.,** a child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-1242

[August 6, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Nicholas Lopane, Judge; L.T. Case No. 11-4288 DL00A.

Carey Haughwout, Public Defender, and Nan Ellen Foley, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Cynthia L. Comras, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The juvenile appeals his adjudication for assault on a law enforcement officer. He argues that because the officer was not engaged in the lawful performance of a duty when the assault occurred, the circuit court erred in denying his motion for judgment of dismissal to reduce the charge from assault on a law enforcement officer to the lesser included offense of assault. We agree with the juvenile's argument and reverse.

At the adjudicatory hearing, an officer who witnessed the assault testified as follows. He and two other uniformed officers received a dispatch to assist a Department of Children and Families ("DCF") investigation of a woman and her young child at her apartment. When the officers arrived at the apartment, the DCF investigator advised them that she discovered the juvenile living with the woman and her child. The woman told the DCF investigator she believed that the juvenile was an adult. When the woman learned that the juvenile was not an adult, she said that she wanted the juvenile to leave.

The officers contacted the juvenile's mother and told her to pick him up. The officers then took the juvenile outside and detained him until his mother arrived. The officers instructed him that he was not to come back to the apartment and that he was being turned over to his mother. The juvenile said that he did not want to go with his mother and wanted to walk off on his own. The officers told him that he had "to be turned over to an adult" and could not "walk off when subject to an investigation." The officer later testified that the juvenile was not the subject of an investigation.

When the juvenile's mother arrived, the officers explained the situation to her. She told the officers that the juvenile frequently runs away and she could not control him. The officers then instructed the juvenile to get into his mother's car. The juvenile sat partially in and partially out of the car, and then started arguing with one of the officers who was standing next to the door. The juvenile again said that he did not want to go with his mother and wanted to leave on foot. The officer with whom the juvenile was arguing said, "Come with me . . . you're going to go to jail for trespassing." At that point, the juvenile became combative. He took a fighting posture, clenched his fists, and said, "I'm not going anywhere" and "I'm going to punch you in your s***." The officer then said, "Okay. Put your hands behind the back of your [head], you're under arrest," and grabbed the juvenile's hand. At that point, the juvenile, with a clenched fist, pushed the officer in the chest. The officer then took the juvenile into custody.

The state ultimately filed a petition for delinquency charging the juvenile with assault on a law enforcement officer under section 784.07(2)(a), Florida Statutes (2011). That statute provides, in pertinent part, as follows:

> (2) Whenever any person is charged with knowingly committing an assault . . . upon a law enforcement officer . . . while the officer . . . *is engaged in the lawful performance of his or her duties*, the offense for which the person is charged shall be reclassified as follows:
>
> (a)   In the case of assault, from a misdemeanor of the second degree to a misdemeanor of the first degree.

§ 784.07(2)(a), Fla. Stat. (2011) (emphasis added).

After the state rested, the juvenile moved for a judgment of dismissal. The juvenile argued, in pertinent part:

2

In order for the State to show that an assault or a battery takes place on a law enforcement officer . . . [the State has] to show that [the] officer was in the legal execution of his duty because a person has a right to resist any unlawful arrest.

. . . .

[T]here's no testimony that [the officer] was in the lawful execution of his duty. At [the time of the assault], according to the testimony, the [juvenile] was with the mother. They had fulfilled their obligation. That he was ordered to go, be with his mother, and he could only be turned over to her custody before he could leave. She met with him. If he wanted to walk off that was now the mother's jurisdiction to decide how to handle that situation. He was off the premises of the apartment [and] he was no longer interfering at all with the investigation by DCF. This is a completely separate incident. Maybe he was mouthy, disrespectful to the officer but that's not enough to sustain this.

. . . .

The state responded that because the officers were assisting in a DCF investigation and investigating a possible trespass, they were engaged in the lawful execution of their duty. The court denied the motion.

In the juvenile's case-in-chief, the juvenile's mother testified that when she got to the apartment location, she told the juvenile to get into her car. He said that he was going to walk, and started walking. The juvenile's mother testified she "was okay with that" because she knew he needed to cool down and she knew the area. However, when the juvenile started walking, "the officers pulled their car in front of him and pulled him to the ground; told him to get in [her] car." The officers then pulled the juvenile back up, and again told him to get in her car. When the juvenile became defiant and did not move, the officers put him in their car.

After the juvenile rested, he renewed his motion for a judgment of dismissal. The juvenile argued, in pertinent part:

[The State has] to show that this officer was in the legal execution of his duty. And there's a difference between a cop just being on duty and being in a legal execution of a duty here. And that wasn't established by the State. The child was

3

ordered to go to his mother, he did. The mother had decided the best way to handle this case was to let him cool down, walk off. She had the experience. She knew what she was doing. And the situation and in her estimation was being resolved. The officers took it upon themselves to come back and grab the child at that point [and arrest him].

. . . They no longer were in lawful execution of a duty, the child was not inhibiting, or delaying, or obstructing the DCF investigation at all. He was not being detained for any sort of investigation at all regarding anything. . . . .

Also, with . . . the lack of the execution of duty, the child really has no obligation to do anything except . . . leave the apartment, which he did and was satisfied. And then fall into the mother's jurisdiction to handle that. There's really nothing . . . further because the State hasn't met those elements and established that there was a legal duty at that point. . . . .

The circuit court denied the motion for judgment of dismissal. The court then found the juvenile guilty of assault on a law enforcement officer and adjudicated him delinquent.

This appeal followed. The standard of review applicable to the denial of a motion for judgment of dismissal in a juvenile case is de novo. *A.R. v. State*, 127 So. 3d 650, 653 (Fla. 4th DCA 2013) (citation omitted). If the evidence taken in the light most favorable to the state does not support the juvenile's guilt, then we must reverse the denial of the motion for judgment of dismissal. *Id.*

The juvenile argues that the circuit court erred in denying his motion for a judgment of dismissal as to the enhanced offense of assault on a law enforcement officer, and that we should remand the case with directions to reduce the adjudication to the lesser included offense of assault.

The state argues that, at the time of the assault, the officer was engaged in the lawful performance of a duty in three ways:

First . . . the police were still assisting with the DCF investigation and by not actually leaving the premises, there was a real possibility that [the juvenile] would have returned to the residence, where he had been living, and interrupted or interfered with the investigation. Thus, they had a legal duty

4

to ensure that he left the premises completely. And the only way to ensure this would be if [the juvenile] left in the car with his mother. If [the juvenile] left on foot, as he wanted, he could have easily returned to the residence, contrary to [the woman's] wishes . . . .

Second, while [the juvenile] was not initially the subject of the DCF's investigation of [the woman] and the child, he became the subject of a DCF investigation and subject to detention by the police, until he could be released to a parent, because it was disclosed during the initial investigation that he was under the age of 18 and he was having a sexual relationship with [the woman], an adult. *See* § 794.011(8), Fla. Stat. (2011) (sexual battery of a child between the ages of 12 and 18 and noting that consent is not a defense); § 39.401(1)-(2), Fla. Stat. (2011) (Taking a child alleged to be dependent into custody; law enforcement officers and authorized agents of the department. – A child may only be taken into custody by a law enforcement officer if the officer has probable cause to support a finding that the child has been abused and if the officer takes the child into custody, the officer shall release the child to the parent of the child). . . .

Third, when the mother arrived on the scene to pick [the juvenile] up, she told the police that her son was a frequent runaway and she could not control him. At this point, the police were authorized under their community care-taking function to take [the juvenile] into custody and release him to her care. *See* § 984.13, Fla. Stat. (2011) (authorizing and obligating a law enforcement officer to take a child into custody if the officer has reasonable grounds to believe that the child has run away from his parents); *see also D.O. v. State*, 77 So. 3d 787, 790 (Fla. 3d DCA 2011) [(Emas, J., specially concurring)] ("Law enforcement, in a very real sense, fulfills a role as a 'community caretaker' when they encounter . . . child runaways . . . and children beyond the control of their parents. *They have not only the authority, but also a statutory obligation, to quickly reunite the child with their parent or guardian,* or return the child to school or the appropriate agency that can provide the services needed in light of the individual circumstances.") (emphasis added).

We agree with the juvenile's argument for reduction of the enhanced offense, and conclude that the state's three arguments for the enhanced offense lack merit. We address each of the state's three arguments in turn.

The state's first argument appears to suggest that the officers arrested the defendant for the crime of "possible later trespass" of the woman's residence. However, no such crime exists. Moreover, the officers could not lawfully arrest the juvenile for trespass in the woman's residence due to his earlier presence there because he already had left that residence after being told to do so. *Cf. F.E.H., Jr. v. State*, 28 So. 3d 213, 217 (Fla. 4th DCA 2010) (detective who approached juvenile in the parking lot of a closed daycare center lacked reasonable suspicion to make an investigatory stop of the juvenile for trespassing where the parking lot was an open lot on a corner and the juvenile already had left the lot when he was stopped).

The state's second argument lacks merit as a matter of law. The officer who testified at the adjudicatory hearing conceded that the juvenile was not the subject of a DCF investigation, and the record contains no evidence that the officers were seeking to take the juvenile into custody as a dependent child. Moreover, no legal basis existed for the officers to take the juvenile into custody as a dependent child. The juvenile was not an abuse victim under section 794.011(8)(b), Florida Statutes (2011), as the state alleges, because the woman with whom he was living was not "a person . . . in a position of familial or custodial authority" over him. § 794.011(8)(b), Fla. Stat. (2011). As for the relationship between the juvenile and his mother, the officers had no information to form a probable cause finding that he had been "abused, neglected, or abandoned, or [was] suffering from or [was] in imminent danger of illness or injury as a result of abuse, neglect, or abandonment." § 39.401(1)(b)1., Fla. Stat. (2011).

The state's third argument also lacks merit as a matter of law. Although the juvenile's mother told the officers that he frequently runs away and she could not control him, the record contains no evidence that the officers were seeking to take the juvenile into custody as a runaway. *See* § 984.13(1)(a), Fla. Stat. (2011). As for the "community caretaker" role described in *D.O.*, the officers already had fulfilled that role by reuniting the juvenile with his mother. Although the juvenile again said that he did not want to go with his mother and wanted to leave on foot, his mother did not request the officers to prevent him from doing so, and he had not done so before the officer at issue told him "you're going to go to jail for trespassing" and grabbed the juvenile out of his mother's car. Without more information from the mother or more action from the juvenile, it was

6

premature for the officer at issue to intervene in the mother's custody of her son at that time, even if well-intentioned.

In sum, because the officer whom the juvenile pushed was not engaged in the lawful performance of his duty at the time of the assault, the circuit court erred in denying the juvenile's motion for judgment of dismissal to reduce the charge from the enhanced offense of assault on a law enforcement officer to the lesser included offense of assault. We reverse and remand with instructions for the circuit court to adjudicate the juvenile of the lesser included offense of assault, and to conduct any further proceedings necessary as a result of that lesser adjudication.

*Reversed and remanded with instructions.*

GROSS and CONNER, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***