NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

A.J.R.,                                    )
                                           )
            Appellant,                     )
                                           )
v.                                         )        Case Nos.    2D15-3226
                                           )                     2D15-3359
STATE OF FLORIDA,                          )
                                           )        CONSOLIDATED
            Appellee.                      )
_____)

Opinion filed December 9, 2016.

Appeal from the Circuit Court for
Hillsborough County; Manuel A. Lopez,
Judge.

Howard L. Dimmig, II, Public Defender, and
Robert D. Rosen, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Jeffrey H. Siegal,
Assistant Attorney General, Tampa, for
Appellee.


KHOUZAM, Judge.


        In this consolidated appeal, A.J.R. challenges two separate delinquency

dispositions.  Because A.J.R. raises no issue with his disposition and placement for

battery in case 15-CJ-1794A, we affirm that disposition and placement without

comment. But in case 14-CJ-4304A there was insufficient evidence to support A.J.R.'s disposition for obstructing an officer without violence because the officer he was accused of obstructing was not engaged in the lawful execution of a legal duty. Accordingly, we reverse with instructions to vacate A.J.R.'s disposition and to discharge his probationary placement.

I

On October 8, 2014, Deputy Ryan Krouse responded to a juvenile trouble call from A.J.R.'s mother, who was experiencing difficulty getting A.J.R. to go to school. Deputy Krouse, clothed in his full uniform, arrived on the scene in a marked patrol car. He instructed A.J.R. that he had two options: either A.J.R. could go to school or Deputy Krouse would take him to the Truancy Intake Center. A.J.R. stated that he did not wish to do either. Deputy Krouse told A.J.R. that he was sorry that he found those options unsatisfactory and instructed A.J.R. to follow him to his patrol vehicle so that he could be taken to the Truancy Intake Center. A.J.R. began walking away and broke into a run. Deputy Krouse gave chase and grabbed A.J.R. by his arms and the two fell to the ground. A.J.R. attempted to remove himself from Deputy Krouse's grasp and, at one point, took the Deputy's handcuffs away from him. Eventually, Deputy Krouse took his handcuffs back, wrestled A.J.R. into a prone position, and restrained him with the handcuffs. It is undisputed that the entirety of Deputy Krouse's interaction with A.J.R. occurred in the presence of his mother. There was also no evidence presented that A.J.R. was either suspended or expelled from school.

At the close of the State's case, A.J.R. moved for dismissal of the obstruction charge, arguing that under section 984.13(1)(b), Florida Statutes (2014),

Deputy Krouse was not authorized to take A.J.R. into custody because he was in the presence of his mother. Section 984.13(1)(b) provides in pertinent part:

> (1) A child may be taken into custody:
> . . . .
> (b) By a law enforcement officer when the officer has reasonable grounds to believe that the child is absent from school without authorization or is suspended or expelled and is not in the presence of his or her parent or legal guardian, for the purpose of delivering the child without unreasonable delay to the appropriate school system site.

(Emphasis added.) Because the officer was not authorized, A.J.R. maintained that he could not be convicted of obstructing an officer without violence under section 843.02, Florida Statutes (2014). The trial court rejected A.J.R.'s interpretation of section 984.13(1)(b) and denied the motion to dismiss, finding that A.J.R. committed the delinquent act of obstructing an officer without violence. Adjudication was withheld, and the court placed A.J.R. on probation until his nineteenth birthday.

II

"A motion for judgment of dismissal in a juvenile case tests the legal sufficiency of the evidence presented by the State." P.B.P. v. State, 955 So. 2d 618, 620 (Fla. 2d DCA 2007). "If the evidence is insufficient to establish a prima facie case for the charged crime, then dismissal is proper." Id. In reviewing an order on such a motion, we draw all reasonable inferences in a light most favorable to the State. R.J.K. v. State, 928 So. 2d 499, 502 (Fla. 2d DCA 2006). "Our review of the denial of a motion for judgment of dismissal is de novo." J.W.J. v. State, 994 So. 2d 1223, 1224 (Fla. 1st DCA 2008) (emphasis omitted). We also apply a de novo standard of review to a trial court's construction of a statute. State v. C.M., 154 So. 3d 1177, 1178 (Fla. 4th DCA 2015).

- 3 -

In order to prove that a juvenile obstructed an officer without violence under section 843.02, the State must prove (1) "the officer was engaged in the lawful execution of a legal duty" and (2) that the juvenile's actions "obstructed the exercise of that duty." D.L.S. v. State, 192 So. 3d 1273, 1274 (Fla. 2d DCA 2016). If at the time of the obstruction the officer is not engaged in the lawful execution of a legal duty, dismissal of the obstruction charge is proper. See id.

Section 984.13(1)(b) governs when a law enforcement officer may take a child into custody for truancy. It provides that an officer may take a child into custody if he or she "has reasonable grounds to believe that the child is absent from school without authorization or is suspended or expelled and is not in the presence of his or her parent or legal guardian."

III

The disposition of this case turns on the proper construction of section 984.13(1)(b). The State has not cited any other source for a lawful duty applicable to this case. Under the statute, an officer may take a child into custody if he has "reasonable grounds to believe that the child is absent from school without authorization or is suspended or expelled and is not in the presence of his or her parent or legal guardian." § 984.13(1)(b). As there was no evidence presented that A.J.R. was suspended or expelled, we must determine whether the phrase "not in the presence of his or her parent or legal guardian" applies to situations where the officer suspects that "the child is absent from school without authorization."

In interpreting section 984.13(1)(b), we must consider it in pari materia with other statutes governing truancy.[1]  See State v. Fuchs, 769 So. 2d 1006, 1009 (Fla. 2000) ("[S]tatutes which relate to the same or closely related subjects should be read in pari materia.").  Section 984.13(1)(b) is not the only statute governing truancy.  Rather the legislature has set up a comprehensive statutory framework of escalating remedies for dealing with juveniles who fail to attend school.  See §§ 984.151, 1003.26, Fla. Stat. (2014).  We need not detail the procedural requirements of these statutes, but a review of the remedies they provide is instructive to our construction of section 984.13(1)(b).

Section 1003.26 provides for the enforcement of attendance by the school.  Section 1003.26(3), entitled "Return student to parent," provides an immediate solution for when a student is absent from school:

> A designated school representative may visit the home or place of residence of a student and any other place in which he or she is likely to find any student who is required to attend school when the student is not enrolled or is absent from school during school hours without an excuse, and, when the student is found, shall return the student to his or her parent or to the principal or teacher in charge of the school, or to the private tutor from whom absent, or to the juvenile assessment center or other location established by the district school board to receive students who are absent from school.

---

[1]We have considered, but decline to apply, the doctrine of the last antecedent to discern section 989.13(1)(b)'s appropriate construction.  "[T]he doctrine of the last antecedent is not an absolute rule."  Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1007 (Fla. 2010).  It should not be applied if it would yield an absurd result or if an alternative construction is more reasonable.  See Kasischke v. State, 991 So. 2d 803, 813 (Fla. 2008); see also Nobelman v. Am. Sav. Bank, 508 U.S. 324, 331 (1993) (declining to apply the rule of the last antecedent where the alternative construction was "the more reasonable one").  If we strictly apply the doctrine here, section 984.13(1)(b) would authorize officers to take a child who has been suspended into custody if he or she was in the presence of a parent, but not a child who had been expelled.  And, as we explain in the text, a more reasonable construction of section 984.13(1)(b) emerges when we construe the statute in pari materia with other truancy statutes.

(Emphasis added.)  Further, if a school determines that a child is developing a pattern of nonattendance, the case is referred to a child study team.  § 1003.26(1)(b).  The child study team then must schedule a meeting with the child's parents to identify potential remedies.  Id.  If the initial meeting is unsuccessful, the team must implement "[f]requent attempts at communication between the teacher and the family," "[e]valuation for alternative education programs," and "[a]ttendance contracts."  § 1003.26(1)(c)(1)-(3).  The team may also implement other interventions, including "referral to other agencies for family services or recommendation for filing a truancy petition pursuant to [section] 984.151."  § 1003.26(1)(c).

A truancy petition must make certain allegations, including the dates on which the child was absent from school, and be filed in the circuit in which the child is enrolled in school.  See § 984.151(2), (4).  Following a hearing, if the circuit court determines that the child has in fact missed any of the school days alleged in the petition, the court must "order the student to attend school and the parent to ensure that the student attends school."  § 984.151(7).  The court may also order any of the following:

> the student to participate in alternative sanctions to include mandatory attendance at alternative classes to be followed by mandatory community services hours for a period up to 6 months; the student and the student's parent or guardian to participate in homemaker or parent aide services; the student or the student's parent or guardian to participate in intensive crisis counseling; the student or the student's parent or guardian to participate in community mental health services if available and applicable; the student and the student's parent or guardian to participate in service provided by voluntary or community agencies as available; and the student or the student's parent or guardian to

> participate in vocational, job training, or employment services.

Id. If the child does not complete the court-ordered sanctions, the court must refer the case "to the case staffing committee . . . with a recommendation to file a child-in-need-of-services petition under [section] 984.15." § 984.151(8).

Against this backdrop, we return to section 984.13(b). In light of this framework of remedies, we do not think the legislature intended to authorize a law enforcement officer to take a juvenile into custody under section 984.13(b) if the child is already in the presence of his or her parent or legal guardian. That is, given that the initial remedies set forth by the legislature include meeting with the student's parents and attendance contracts, we do not think the legislature intended to authorize police officers to assist parents in transporting their children to school if the child is already in the presence of his or her parent or legal guardian.

Rather, section 984.13(b) is like section 1003.26(3). These statutes permit law enforcement officers or designated school representatives to take a child who should be in school and is not in the presence of his or her parent into custody and deliver the child to his or her parents, school, or school alternative. Compare § 984.13(b), with § 1003.26(3).

The policy underlying the police's community caretaking function also supports our construction.

> Law enforcement, in a very real sense, fulfills a role as a "community caretaker" when they encounter truants, child runaways, children locked out of their home, and children beyond the control of their parents. They have not only the authority, but also a statutory obligation, to quickly reunite the child with their parent or guardian, or return the child to

> school or the appropriate agency that can provide the
> services needed in light of the individual circumstances.

D.O. v. State, 77 So. 3d 787, 790 (Fla. 3d DCA 2011) (Emas, J., specially concurring).

An officer's caretaker role is fulfilled once a juvenile is reunited with his or her parent or

legal guardian. See D.J.D. v. State, 143 So. 3d 1115, 1119 (Fla. 4th DCA 2014).

In D.J.D., 143 So. 3d at 1116, police officers were dispatched to assist a

DCF investigation. They arrived at an apartment where the juvenile was allegedly living

with a woman and her child. Id. The woman believed that the juvenile was an adult. Id.

When DCF informed her that the juvenile was in fact under age, she stated that she

wanted him to leave. Id. The officers contacted the juvenile's mother and told her to

pick him up. Id. They detained the juvenile until his mother arrived. Id. When the

mother arrived, she told the officers that she could not control the child and that he ran

away frequently. Id. The officers instructed the juvenile to get into his mother's car, but

he announced that he was leaving the scene on foot. Id. One of the officers told the

juvenile that he was going to take him to jail for trespassing. Id. The juvenile resisted

and punched the officer in the chest. Id.

The State charged the juvenile with assault on a law enforcement officer,

an offense which, like obstructing an officer, requires that the assaulted officer be

engaged in the lawful execution of a legal duty. Id. at 1116-17. The juvenile moved to

dismiss and argued that he could only be charged with the lesser offence of assault

because the officer was not engaged in the performance of a legal duty. Id. at 1117.

The State made a number of arguments in an attempt to show that the officer was

engaged in the lawful performance of his duty. Id. at 1118. In pertinent part, the State

argued that when the mother told the police that she could not control her son who

frequently ran away, the officers were authorized under their community caretaking function to take the juvenile into custody.  Id. at 1118-19.  The Fourth District found that this argument "lack[ed] merit as a matter of law."  Id. at 1119.  The Fourth District reasoned that there was no evidence that the officers were trying to take the juvenile into custody as a runaway under section 984.13(1)(a), which provides that a law enforcement officer may take a child into custody if he or she has reasonable grounds to believe that a child has run away from his or her parents.  Id.  Importantly, the court further reasoned:

> As for the "community caretaker" role described in D.O., the officers already had fulfilled that role by reuniting the juvenile with his mother.  Although the juvenile again said that he did not want to go with his mother and wanted to leave on foot, his mother did not request the officers to prevent him from doing so, and he had not done so before the officer at issue told him "you're going to go to jail for trespassing" and grabbed the juvenile out of his mother's car.  Without more information from the mother or more action from the juvenile, it was premature for the officer at issue to intervene in the mother's custody of her son at that time, even if well-intentioned.

Id.

A.J.R., like the juvenile in D.J.D., was in the presence of his parent when an officer attempted to take him into custody.  In both cases, the parents expressed that they were unable to control their children.  Regardless of the mother's difficulties with the juvenile in D.J.D., the police officer's duty in D.J.D. ended when he reunited the juvenile with his mother.  Similarly, here, the officer was not authorized under section 984.13(1)(b) to intervene in the mother's custody despite her trouble in getting him to attend school.  The statute simply does not contemplate the situation where a juvenile is refusing to go to school but is still in the presence of his or her parent.

Accordingly, we reverse A.J.R.'s withhold of adjudication and placement for obstructing an officer without violence with instructions to vacate the withhold of adjudication and discharge A.J.R. from the probation imposed for the obstruction charge.

Affirmed in part, reversed in part, and remanded with instructions.

LUCAS and SALARIO, JJ., Concur.