NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

FREDERICK HEINE and BARBARA
HEINE,

          Appellants,

v.                                  Case No. 2D16-2804

LEE COUNTY, a political subdivision of
the State of Florida; and ALICO WEST
FUND, LLC, a Florida limited liability
company,

          Appellees.

Opinion filed June 30, 2017.

Appeal from the Circuit Court for Lee
County; Elizabeth V. Krier, Judge.

Robert K. Lincoln of the Law Office of
Robert K. Lincoln, P.A., Sarasota, for
Appellants.

Hala Sandridge and Victoria J. Oguntoye
of Buchanan Ingersoll & Rooney, P.C.,
Tampa, for Appellee Alico West Fund,
LLC; and Mark A. Trank and Michael D.
Jacob, Lee County Attorney's Office, for
Appellee Lee County.


LaROSE, Judge.

          Frederick and Barbara Heine appeal a final summary judgment entered in

favor of Alico West Fund, LLC, and Lee County, in the Heines' lawsuit brought under

section 163.3215(3), Florida Statutes (2015) (the Consistency Statute).[1] We have jurisdiction. See Fla. R. App. P. 9.030(b)(1)(A).

The Heines challenged a rezoning resolution approved by the Lee County Board of County Commissioners (the Board) that authorized rezoning of Alico's property. The Heines alleged that the resolution was inconsistent with various provisions of Lee County's comprehensive plan. The trial court found otherwise, ruling that the Heines' claims fell outside the purview of the Consistency Statute.

On appeal, the Heines raise several issues challenging summary judgment. After careful review of the record, and with the benefit of oral argument, we affirm in all respects. However, we write to explain why the trial court properly construed the Consistency Statute.

## Background

Alico owns over eight hundred acres of land in Lee County. North Lake is situated on the western portion of its property. The Heines live in a residential community south of the Alico property and the North Lake. Their residence faces the South Lake. The North Lake and South Lake are connected; the Heines enjoy a recreational easement for the use of the North Lake.

In 2010, Lee County amended its comprehensive plan. The amendment changed the land use designation for a portion of Alico's property to "University Community." The designation requires that "[a]ll development within the University Community must be designed to enhance and support [Florida Gulf Coast University]."

---

[1]The Heines also separately appealed the trial court's order dismissing their declaratory judgment action, and petitioned for issuance of a writ of certiorari, seeking second-tier review of the Board's resolution. These cases, along with the instant appeal, were consolidated to travel together.

The 2010 plan amendment significantly increased the potential development densities and intensities of Alico's property.

Following the 2010 plan amendment, Alico applied to rezone a portion of its property for a project called CenterPlace. Alico intended to develop CenterPlace to cater to the housing, commercial, and recreational needs of nearby University students, faculty, and staff. County zoning staff recommended approval of Alico's request. After several public hearings, a zoning hearing examiner, too, recommended approval. Subsequently, after another public hearing, the Board approved a resolution granting Alico's application.

The resolution rezoned Alico's property to "Compact Planned Development," and authorized an increase in development of up to 250 hotel rooms, 246,500 square feet of commercial/retail space, 100,000 square feet of office space, and 300,000 square feet of research and development space. The resolution also authorized up to 250 wet boat slips on the North Lake, 50 dry slips, installation of a boat ramp, and up to 20 trailer parking spaces.

Following Board approval, the Heines sued Lee County and Alico, alleging that the resolution was inconsistent with Lee County's comprehensive plan. The Heines challenged the resolution on numerous grounds: (1) failure to include enforcement conditions for the construction of a minimum square footage of commercial space and minimum residential density requirements; (2) failure to ensure the installation of plantings, buffers, and landscaping "using xeriscape principles"; (3) failure to "ensure that there will be a mix of housing types sufficient to meet the varying lifestyle of students, faculty, administration and support staff"; (4) failure to obtain prior approval by the University; (5) failure to give adequate consideration to noise, security, and visual

impacts on the property; and, (6) failure to meet the 2010 plan amendment's safety requirements pertaining to the University. The trial court granted summary judgment on Alico's and Lee County's joint motion, ruling that the Heines' challenges were not within the scope of the Consistency Statute because "they do not qualify as uses, densities, or intensities of uses."

## Standard of Review

We review the trial court's interpretation and construction of the Consistency Statute de novo. See A.J.R. v. State, 206 So. 3d 140, 142 (Fla. 2d DCA 2016) ("We also apply a de novo standard of review to a trial court's construction of a statute." (citing State v. C.M., 154 So. 3d 1177, 1178 (Fla. 4th DCA 2015))). Further, because we are tasked with reviewing the trial court's award of summary judgment, we likewise employ de novo review. Gator Boring & Trenching, Inc. v. Westra Constr. Corp., 210 So. 3d 175, 181 (Fla. 2d DCA 2016).

## Analysis

The Heines argue that the trial court erroneously limited the scope of claims allowed under the Consistency Statute. They insist that the trial court adopted a too narrow and restrictive reading of the Consistency Statute, thus thwarting its remedial purpose. They urge us to adopt an expansive reading of the statute so as to allow a broader variety of claims under the Consistency Statute. They maintain that reading the statute in pari materia with other statutory provisions compels reversal. See State v. Fuchs, 769 So. 2d 1006, 1009 (Fla. 2000) ("[S]tatutes which relate to the same or closely related subjects should be read in pari materia." (citing State v. Ferrari, 398 So. 2d 804, 807 (Fla. 1981))). We are not persuaded.

- 4 -

Florida law mandates consistency between a local government's comprehensive plan and its development orders.[2]  See § 163.3194(1)(a) ("After a comprehensive plan . . . has been adopted in conformity with this act, all development undertaken by, and all actions taken in regard to development orders . . . shall be consistent with such plan or element as adopted.").  To ensure compliance with this obligation, the Florida Legislature permits "[a]ny aggrieved or adversely affected party [to] maintain a de novo action . . . to challenge any decision of such local government granting . . . a development order."  § 163.3215(3); see also Pinecrest Lakes, Inc. v. Shidel, 795 So. 2d 191, 200 (Fla. 4th DCA 2001) ("[W]e observed that section 163.3215 had liberalized standing requirements and demonstrated 'a clear legislative policy in favor of the enforcement of comprehensive plans by persons adversely affected by local action.' " (quoting Sw. Ranches Homeowners Ass'n v. Broward County, 502 So. 2d 931, 935 (Fla. 4th DCA 1987))).

But the type of claim allowed under the Consistency Statute is not unlimited.  The statute authorizes an aggrieved party to bring an action to challenge a development order that "materially alters the use or density or intensity of use on a particular piece of property which is not consistent with the comprehensive plan." § 163.3215(3).  A plain reading of this text compels us to conclude, as did the trial court, that the Heines' challenges to the rezoning resolution do not fall within the ken of these three areas.

---

[2]The Board's rezoning resolution qualifies as a "development order."  See § 163.3164(15) (defining a "development order" as "any order granting, denying, or granting with conditions an application for a development permit").

- 5 -

"Legislative intent is the polestar that guides our analysis regarding the construction and application of the statute." Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013) (citing Bautista v. State, 863 So. 2d 1180, 1185 (Fla. 2003)).  Accordingly, we " 'begin with the actual language used in the statute' because legislative intent is determined first and foremost from the statute's text." Raymond James Fin. Servs., Inc. v. Phillips, 126 So. 3d 186, 190 (Fla. 2013) (quoting Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 198 (Fla. 2007)).

> When a statute is clear, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent.  Instead, the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent.

State v. Burris, 875 So. 2d 408, 410 (Fla. 2004) (citation omitted).

The pertinent language of the Consistency Statute is clear and unambiguous.  The statute enunciates only three bases upon which a party may challenge a development order's purported inconsistency with a comprehensive plan.  Therefore, we will not resort to rules of statutory construction to countenance the Heines' expansive view of the statute's scope.  That task, if undertaken at all, is for the legislature.  As our sister district observed, "there is no basis for us to look to 'polestars' when the ship of statutory interpretation is guided by clear text.  That is to say, we look only to clear text for statutory meaning, not to the stars." Brown v. State, 848 So. 2d 361, 364 (Fla. 4th DCA 2003).

The Heines claim that the trial court should have construed the Consistency Statute in pari materia with section 163.3194(3)(a), which provides as follows:

> A development order or land development regulation shall be consistent with the comprehensive plan if the land uses, densities or intensities, <u>and other aspects of development permitted</u> by such order or regulation are compatible with and further the objectives, policies, land uses, and densities or intensities in the comprehensive plan and if it meets all other criteria enumerated by the local government.

(Emphasis added). They argue that the language, "other aspects of development permitted," allows an attack upon the development order, apart from grounds of use, density, or intensity explicitly provided for in the Consistency Statute. However, once again, "the 'in pari materia' canon of statutory construction would be appropriate only if we found the statute ambiguous." <u>Brown</u>, 848 So. 2d at 364 (emphasis omitted). We do not. We will not rewrite the Consistency Statute to include language omitted by the legislature. The Florida Supreme Court has observed:

> Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity. . . . If it has been passed improvidently the responsibility is with the Legislature and not the courts.

<u>Forsythe v. Longboat Key Beach Erosion Control Dist.</u>, 604 So. 2d 452, 454 (Fla. 1992) (quoting <u>Van Pelt v. Hilliard</u>, 78 So. 693, 694-95 (Fla. 1918)); <u>see also</u> <u>Capeletti Bros., Inc v. Dep't of Transp.</u>, 499 So. 2d 855, 857 (Fla. 1st DCA 1986) ("The omission may be a legislative oversight; nevertheless, courts should not rewrite legislation to cure an omission by the legislature just because it seems to fit overall legislative policy.").

We have no basis to conclude that the absence of the "other aspects of development permitted" language in the Consistency Statute was a legislative oversight. <u>See, e.g.</u>, <u>Aramark Unif. & Career Apparel, Inc. v. Easton</u>, 894 So. 2d 20, 24 (Fla. 2004) ("The absence of a causation requirement in the statute cannot be viewed as a

legislative oversight."). The omission of such language is presumed to be deliberate, and is evidence that the Consistency Statute limits the scope of claims to use, density, and intensity challenges only. "This conclusion logically derives from a general principle of statutory construction, expressio unius est exclusio alterius, which means that 'express mention of one thing is the exclusion of another.' " Citizens for Responsible Growth v. City of St. Pete Beach, 940 So. 2d 1144, 1150 (Fla. 2d DCA 2006) (quoting Inman v. State, 916 So. 2d 59, 61 (Fla. 2d DCA 2005)).

The Heines argue that the Consistency Statute is remedial in nature; thus, it must be read liberally. See Golf Channel v. Jenkins, 752 So. 2d 561, 565-66 (Fla. 2000) ("[R]emedial statutes should be liberally construed in favor of granting access to the remedy provided by the Legislature." (citing Arrow Air, Inc. v. Walsh, 645 So. 2d 422, 424 (Fla. 1994))). In support of their position, they rely on Education Development Center, Inc. v. Palm Beach County, 751 So. 2d 621, 623 (Fla. 4th DCA 1999). There, the Fourth District recognized that "[s]ection 163.3215 enlarged the class of persons with standing to challenge a development order as inconsistent with the comprehensive plan." Id. Our sister district stated that section 163.3215 "should be liberally construed to advance the intended remedy, i.e., to ensure standing for any party with a protected interest under the comprehensive plan who will be adversely affected by the governmental entity's actions." Id. (emphasis added) (citing Parker v. Leon County, 627 So. 2d 476, 479 (Fla. 1993)). The Heines, however, conflate the Consistency Statute's expansive conferral of standing with the scope of what a plaintiff with standing may challenge. See Martin County Conservation All. v. Martin County, 134 So. 3d 966, 967 (Fla. 1st DCA 2010) ("Section 163.3215 is a remedial statute designed to enlarge the class of persons with standing to challenge a local development order."). Because the

Consistency Statute was intended to liberalize standing, not broaden the scope of what a party with standing may challenge beyond use, density, and intensity, the trial court did not err in construing the statute literally, rather than liberally.

## Conclusion

Because the trial court correctly construed the Consistency Statute as permitting only those challenges specifically authorized therein, and properly applied the statute to the facts of this case, we affirm.

Affirmed.


CRENSHAW and SLEET, JJ., Concur.