NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

WILLIAM DAVID FITTS and NANCY B.
FITTS,

        Appellants,

v.

        Case No. 2D18-538

BILL FURST, as Sarasota County Property
Appraiser, and LEON M. BIEGALSKI, as
Executive Director of the Department of
Revenue,

        Appellees.

_____

Opinion filed September 13, 2019.

Appeal from the Circuit Court for Sarasota
County; Frederick P. Mercurio, Judge.

David A. Wallace and Amanda R. Kison of
Bentley & Bruning, P.A., Sarasota, for
Appellants.

Jason A. Lessinger, J. Geoffrey Pflugner,
Anthony Manganiello, III, and Mark C.
Dungan of Icard, Merrill, Cullis, Timm,
Furen & Ginsburg, P.A., Sarasota, for
Appellee Bill Furst.

Ashley Moody, Attorney General, and
Robert P. Elson, Senior Assistant Attorney
General, Tallahassee, for Appellee Leon M.
Biegalski.

BLACK, Judge.

William and Nancy Fitts filed a lawsuit against the Sarasota County Property Appraiser (Property Appraiser) and the Executive Director of the Florida Department of Revenue (Director) after the Property Appraiser recorded a tax lien on their home pursuant to section 196.161(1)(b), Florida Statutes (2016), and revoked their homestead tax exemption.[1] The Fittses brought the suit after the Property Appraiser determined that for approximately five years the Fittses had been benefitting from a homestead tax exemption on their Sarasota County home while simultaneously receiving the benefit of a tax exemption in Ohio based upon permanent residency there in violation of section 196.031(5). The Fittses now appeal the entry of the final summary judgment in favor of the Property Appraiser and the Director, raising five issues. We affirm in all respects and write only to address the second issue raised on appeal concerning the circuit court's interpretation and application of section 196.161(1)(b). For the reasons expressed herein, we conclude that the circuit court did not err in determining that the Fittses' Sarasota County home is subject to back taxes, penalties, and interest pursuant to section 196.161(1)(b) despite the Fittses being permanent residents of Florida who did not intend to receive the benefit of the tax exemption based upon permanent residency in Ohio.

Section 196.031(5) provides, in part, that "[a] person who is receiving or claiming the benefit of an ad valorem tax exemption or a tax credit in another state where permanent residency is required as a basis for the granting of that ad valorem tax

---

[1]The Fittses also lost the benefit of the "Save Our Homes" tax cap. See art. VII, § 4(d)(1), Fla. Const.; § 193.155(8), Fla. Stat. (2016).

- 2 -

exemption or tax credit is not entitled to the homestead exemption provided by this section."  Although it is undisputed that the Fittses did not intend that their home in Ohio serve as their permanent residence and that during the time they owned that property they were permanent residents of Florida receiving a homestead exemption on property in this state, through a third-party's error they received the benefit of a permanent residency-based tax exemption on their home in Ohio for several years.  The Property Appraiser became aware that the Fittses were receiving the benefit of tax exemptions in both Ohio and Florida based on permanent residency following an audit and then sent the Fittses a notice of his intent to record a tax lien on their home in Sarasota County pursuant to section 196.161(1)(b).  Prior to receiving that notice, the Fittses were apparently unaware that they had been receiving a tax exemption in Ohio based upon permanent residency, the credit for which totaled approximately $560 for the five-year period at issue.[2]  Because the Fittses received the benefit of a tax exemption in Ohio based on permanent residency while simultaneously receiving a homestead exemption in Florida in violation of section 196.031(5), the Property Appraiser determined that the Fittses were required to pay back taxes, penalties, and interest pursuant to section 196.161(1)(b).[3]  Relying on these statutes and the undisputed facts, both parties moved

_____

[2]The Fittses have since tendered payment to the county treasurer in Ohio for the entire sum erroneously credited to them based on the permanent residency exemption.

[3]The Fittses argued before the circuit court, as they do on appeal, that the tax exemption they received on their Ohio home was not based on permanent residency as contemplated by Florida law and that they did not "claim" or "receive" the Ohio tax exemption within the logical meaning of section 196.031(5).  As previously stated, however, we find no merit in these contentions and affirm these issues without comment.

for summary judgment.  Following a hearing on the motions, the circuit court entered final summary judgment in favor of the Property Appraiser and the Director.

Section 196.161, titled "Homestead exemptions; lien imposed on property of person claiming exemption although not a permanent resident," provides, in part, as follows:

> (1)(a) When the estate of any person is being probated or administered in another state under an allegation that such person was a resident of that state and the estate of such person contains real property situate in this state upon which homestead exemption has been allowed pursuant to s. 196.031 for any year or years within 10 years immediately prior to the death of the deceased, then within 3 years after the death of such person the property appraiser of the county where the real property is located shall, upon knowledge of such fact, record a notice of tax lien against the property among the public records of that county, and the property shall be subject to the payment of all taxes exempt thereunder, a penalty of 50 percent of the unpaid taxes for each year, plus 15 percent interest per year, unless the circuit court having jurisdiction over the ancillary administration in this state determines that the decedent was a permanent resident of this state during the year or years an exemption was allowed, whereupon the lien shall not be filed or, if filed, shall be canceled of record by the property appraiser of the county where the real estate is located.
>
> (b) In addition, upon determination by the property appraiser that for any year or years within the prior 10 years a person who was not entitled to a homestead exemption was granted a homestead exemption from ad valorem taxes, it shall be the duty of the property appraiser making such determination to serve upon the owner a notice of intent to record in the public records of the county a notice of tax lien against any property owned by that person in the county, and such property shall be identified in the notice of tax lien. Such property which is situated in this state shall be subject to the taxes exempted thereby, plus a penalty of 50 percent of the unpaid taxes for each year and 15 percent interest per annum.  However, if a homestead exemption is improperly granted as a result of a clerical mistake or an omission by the property appraiser, the person improperly receiving the

exemption shall not be assessed penalty and interest.
Before any such lien may be filed, the owner so notified must
be given 30 days to pay the taxes, penalties, and interest.

§ 196.161(1)(a)-(b).  The Fittses argue on appeal that both the title to section 196.161 and the language of section 196.161(1) reflect the legislature's intent only to impose a lien on a person's property in the event that the person claiming the homestead exemption in Florida is not in fact a Florida permanent resident.  Thus, the Fittses, as permanent residents of Florida, should not be subject to the severe sanctions set forth in section 196.161(1)(b).  They further assert that it is inconsistent with the legislature's intent and illogical to penalize the Fittses for an error made by a third party in Ohio because the legislature has expressly stated in section 196.161(1)(b) that the penalty and interest shall not be assessed in the event that a homestead exemption is granted in this state through an error on the part of a Florida property appraiser.  The Fittses contend that section 196.031(5) dictates the sanction that they should face, if any at all—the loss of the Florida homestead exemption going forward and nothing more.

We review an order granting summary judgment de novo.  Heine v. Lee County, 221 So. 3d 1254, 1256 (Fla. 2d DCA 2017).  Likewise, we review the circuit court's interpretation of a statute de novo.  Id.  As the supreme court has repeatedly held, "statutory interpretation begins with the plain meaning of the statute."  Fla. Birth-Related Neurological Injury Comp. Ass'n v. Dep't of Admin. Hearings, 29 So. 3d 992, 997 (Fla. 2010) (citing GTC, Inc. v. Edgar, 967 So. 2d 781, 785 (Fla. 2007)).  We thus begin our analysis by examining the plain language of section 196.161(1)(b), which provides that it applies to "a person who was not entitled to a homestead exemption" but "was granted a homestead exemption from ad valorem taxes."  (Emphasis added.)

The plain language does not limit section 196.161(1)(b)'s application to those persons who are not permanent residents of Florida and instead applies to anyone who—for whatever reason—is not entitled to a homestead exemption. "[W]here the language of the statute is plain and unambiguous, there is no need for judicial interpretation." State v. Bradford, 787 So. 2d 811, 817 (Fla. 2001) (quoting T.R. v. State, 677 So. 2d 270, 271 (Fla. 1996)). But as the Fittses contend, "we must give due weight and effect to the title of the section" as it "is more than an index to what the section is about or has reference to; it is a direct statement by the legislature of its intent." Aramark Uniform & Career Apparel, Inc. v. Easton, 894 So. 2d 20, 25 (Fla. 2004) (first citing State v. Webb, 398 So. 2d 820, 825 (Fla. 1981); and then quoting Webb, 398 So. 2d at 825); see also Fajardo v. State, 805 So. 2d 961, 963 (Fla. 2d DCA 2001) ("We recognize that the title of a legislative enactment, and, less frequently, the titles within codified statutes may be helpful in construing an ambiguous statute."). However, the title of a statute is not determinative. See Dep't of Revenue v. Val-Pak Direct Mktg. Sys., Inc., 862 So. 2d 1, 5 (Fla. 2d DCA 2003) (quoting Bradford, 787 So. 2d at 819). We must also consider the language of subsection (1)(a) "in order to determine whether it creates an ambiguity not otherwise apparent on the face of" section 196.161(1)(b). See State v. Peraza, 259 So. 3d 728, 732 (Fla. 2018). "This is true because '[w]here possible, courts must give effect to all statutory provisions and construe related statutory provisions in harmony with one another.' " Id. (quoting M.W. v. Davis, 756 So. 2d 90, 101 (Fla. 2000)). The title of section 196.161 and the language of subsection (1)(a) specifically reference persons who are or were not permanent residents of this state. So to the extent that the title of section 196.161 and the language of section 196.161(1)(a) can reasonably be read to

- 6 -

limit the applicability of subsection (1)(b) to those who are not permanent residents of Florida making it "susceptible to more than one interpretation," it would be necessary "to utilize principles of statutory construction to ascertain legislative intent."  See State Farm Mut. Auto. Ins. Co. v. Shands Jacksonville Med. Ctr., Inc., 210 So. 3d 1224, 1228-29 (Fla. 2017); accord Bautista v. State, 863 So. 2d 1180, 1185 (Fla. 2003) ("If the statutory language is unclear, we apply rules of statutory construction and explore legislative history to determine legislative intent." (first citing Joshua v. City of Gainesville, 768 So. 2d 432, 435 (Fla. 2000); and then citing Weber v. Dobbins, 616 So. 2d 956, 958 (Fla. 1993))).

In Bradford, the supreme court concluded that the legislature did not intend that fraudulent intent be an element of unlawful insurance solicitation under section 817.234(8), Florida Statutes (1997), despite the fact that the title of section 817.234 was "False and Fraudulent Insurance Claims."  787 So. 2d at 818-19.  In so holding, the supreme court cogently explained:

> The arrangement and classification of laws for purposes of codification in the Florida Statutes is an administrative function of the Joint Legislative Management Committee of the Florida Legislature.  The classification of a law or a part of a law in a particular title or chapter of Florida Statutes is not determinative on the issue of legislative intent, though it may be persuasive in certain circumstances.  Where there is a question, established principles of statutory construction must be utilized.

Id. at 819 (quoting State v. Bussey, 463 So. 2d 1141, 1143 (Fla. 1985)).  We must turn, then, to the well-settled principle of statutory construction that "[t]he legislative use of different terms in different portions of the same statute is strong evidence that different

- 7 -

meanings were intended." Id. (quoting State v. Mark Marks, P.A., 698 So. 2d 533, 541 (Fla. 1997)).

Section 196.161(1)(a), which addresses a tax lien imposed on real property of an estate, expressly provides that if it is determined "that the decedent was a permanent resident of this state during the year or years an exemption was allowed, . . . the lien shall not be filed or, if filed, shall be canceled by the property appraiser." Had the legislature intended the penalties set forth in section 196.161(1)(b) to apply only to persons who are not permanent residents of Florida, it surely would have expressed that intent as it did in subsection (1)(a). See Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So. 2d 911, 914 (Fla. 1995) ("When the legislature has used a term . . . in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded."); cf. Bradford, 787 So. 2d at 819 ("[W]hile intent to defraud is not mentioned in subsection (8), it is specifically included as an element in subsections (1), (2), (3), (4), and (7) of section 817.234. Thus, this principle of statutory construction lends further support to our determination that the [l]egislature intentionally excluded fraud as an element of subsection (8). It is evident that the [l]egislature knew how to include intent to defraud as an element, and it could have easily done so with respect to subsection (8) if it so wished."). Similarly, the legislature expressed its intent that "if a homestead exemption is improperly granted as a result of a clerical mistake or an omission by the property appraiser, the person improperly receiving the exemption shall not be assessed penalty and interest." § 196.161(1)(b). Had it likewise been the intent of the legislature not to sanction persons improperly granted an exemption based

on permanent residency in another state due to an error on the part of a third party in that state, the legislature would have expressed such intent.

The legislative history of section 196.161 further supports our determination that the application of subsection (1)(b) is not limited to persons who are not permanent residents of Florida. Cf. Bradford, 787 So. 2d at 817-18. Section 192.215 was enacted in 1967 and was soon after renumbered to section 196.161. See ch. 67-134, §§ 1-4, Laws of Fla.; ch. 69-55, §§ 1-2, Laws of Fla. The title of section 196.161—"Homestead exemptions; lien imposed on property of person claiming exemption although not a permanent resident"—has remained largely unchanged since the statute's enactment, with the exception that in 1981 the phrase "permanent resident" replaced the phrase "bona fide resident." See ch. 81-219, § 12, Laws of Fla. That same year, subsection (1)(b) was added and read as follows:

> In addition, upon determination by the property appraiser that for any year or years within the prior 10 years a person who was not a permanent resident of this state was granted a homestead exemption from ad valorem taxes, that person's property which is situated in Florida shall be subject to the taxes exempted thereby, plus 15 percent interest per annum.

Id. (emphasis added). Thus, when first added, section 196.161(1)(b) was clearly intended by its plain language to apply to someone who was not a permanent resident of this state. Importantly, however, the statute was amended in 1986 and the phrase "not a permanent resident of this state" was replaced with the phrase "not entitled to a homestead exemption." See ch. 86-300, § 10, Laws of Fla. This amendment further evinces the intent on the part of the legislature that this subsection apply to anyone who is "not entitled to a homestead exemption"—for whatever reason—and not just persons

who are not entitled to a homestead exemption because they are not permanent residents of Florida. See Larimore v. State, 2 So. 3d 101, 114-15 (Fla. 2008) (concluding that "[s]ince the [l]egislature added a section [in 1999] providing for special procedures where immediate release is anticipated, and amended section 394.915[, Florida Statutes,] to state that the person 'remain in custody' rather than be 'taken into custody,' there is no longer any statutory basis on which to hold that there is no 'in custody' requirement in the Jimmy Ryce Act" despite the fact that "the title of section 394.915 remained the same, and includes the reference to 'respondent taken into custody' "); see also State v. Phillips, 119 So. 3d 1233, 1241 n.10 (Fla. 2013) (discussing the statutes at issue in Larimore and noting that "[t]he failure to amend the title of section 394.915 to conform with the [1999 amendment to the] text of that section appears to simply be an oversight on the part of the [l]egislature").

In sum, the plain language of section 196.161(1)(b) as well as the principles of statutory construction and the legislative history of the statute demonstrate that the legislature did not intend to limit the application of section 196.161(1)(b) to only those persons who are not permanent residents of Florida.

We note that very few cases expressly address section 196.161(1)(b). However, we find Mitchell v. Higgs, 61 So. 3d 1152 (Fla. 3d DCA 2011), to be instructive. See Bautista, 863 So. 2d at 1185-86 (explaining that in addition to the language, title, and history of the statute, "the state of law already in existence on the statute" must be considered when discerning legislative intent (quoting State v. Anderson, 764 So. 2d 848, 849 (Fla. 3d DCA 2000))). Mr. Mitchell was granted a homestead tax exemption on his Key West home in 1996. 61 So. 3d at 1153. In 1999,

he bought a home on Sugarloaf Key and then six years later changed his Florida driver's license and voter's registration from the Key West address to the Sugarloaf Key address. Id. However, on the voter registration change of address card Mr. Mitchell listed his Key West home as the "address of homestead exempted property." Id. at 1154. Then in 2007, Mr. Mitchell changed his driver's license and voter registration to reflect his Key West address. Id. A short time later and upon determining that the Key West home was vacant, the Monroe County Property Appraiser notified Mr. Mitchell that the homestead exemption on the Key West home had been revoked. Id. A subsequent notice advised Mr. Mitchell that he was not entitled to the homestead exemption on his Key West home for the eight-year period spanning from 1999 through 2006, during which time he owned the home on Sugarloaf Key. Id. Mr. Mitchell filed a lawsuit seeking a declaratory judgment that he was entitled to the homestead exemption from 1999 through 2007 and seeking "removal of the tax lien filed against him by the appraiser under section 196.161, Florida Statutes (2006), for the unpaid property tax, penalties, and interest (totaling approximately $28,000) over the eight years, 1999 through 2006." Id. The circuit court granted final summary judgment in favor of Mr. Mitchell as to the years 1999 through 2006 and revoked the recorded tax lien. Id. As for the 2007 tax year, the circuit court concluded following a bench trial that the property appraiser had proven that Mr. Mitchell was not entitled to the homestead exemption on the Key West home. Id.

On appeal, the Third District agreed with the circuit court that because Mr. Mitchell's permanent residence as of January 1, 2007, was on Sugarloaf Key he was not entitled to a homestead exemption on the Key West home that year. Mitchell, 61

So. 3d at 1154.  Turning then to Mr. Mitchell's entitlement to a homestead exemption

from 1999 through 2006, the Third District stated:

> Retroactive revocation of the homestead exemption (for up
> to ten prior years) is the subject of an express legislative
> enactment, section 196.161 . . . .
>
>     The legislature has imposed a series of requirements
> for eligibility for the homestead tax exemption and a
> mechanism[, section 196.161,] for recovering the tax savings
> (plus interest and a penalty) realized by a property owner not
> actually entitled to claim the exemption.

Id. at 1155.  The Third District reiterated that "statutes involving tax exemptions are

strictly construed against the taxpayer," before concluding that section 196.161 is

constitutional and enforceable as applied to Mr. Mitchell.  Id. (quoting Haddock v

Carmody, 1 So. 3d 1133, 1137 (Fla. 1st DCA 2009)).  It was undisputed that Mr.

Mitchell was a permanent resident of Florida; the only issue in dispute was which

Florida home served as his permanent residence.  And despite being a permanent

resident of Florida, the Third District determined that Mr. Mitchell was subject to the

"mechanism for recovering the tax savings (plus interest and a penalty) realized by a

property owner not actually entitled to claim the exemption" found in section 196.161.

See id.  The Third District sympathized with Mr. Mitchell, expressing agreement with the

circuit court's observation that section 196.161 seems unfair because it is not

reciprocal—Mr. Mitchell is unable to receive the benefit of the homestead exemption on

the Sugarloaf Key property dating back to 1999.  Id. at 1155-56.  But the Third District

also acknowledged that "[n]owhere is it written, however, that the legislature must enact

reciprocal rules as they relate to exemptions.  The remedy for the lack of reciprocity lies

with the legislature, not the courts." Id. at 1156. The Third District court then reversed the final summary judgment that had been entered in favor of Mr. Mitchell. Id.

While the facts of Mitchell do not mirror those in the case before us, Mitchell nonetheless establishes that even permanent residents of Florida may be subject to the sanctions set forth in section 196.161(1)(b) if they have claimed the benefit of the homestead exemption in this state but were not entitled to do so. Moreover, the legislature has not expressed its intent to punish permanent residents of this state who are not entitled to a homestead exemption for one reason or another any less severely than those who are not permanent residents of this state but somehow managed to receive a homestead exemption on property in this state. Cf. § 196.075(9); see generally Miles v. Parrish, 199 So. 3d 1046 (Fla. 4th DCA 2016); Brklacic v. Parrish, 149 So. 3d 85 (Fla. 4th DCA 2014).

To the extent that the Fittses argue that the sanction to be imposed upon the property of Florida permanent residents who are improperly receiving a homestead exemption on property in this state while also receiving a tax exemption in another state based on permanent residency is merely the loss of the exemption pursuant to section 196.031(5), we cannot agree. That statute contains no reference to a sanction. Section 196.031(5) merely provides that persons receiving a tax exemption in another state based on permanent residency are not entitled to a homestead exemption in Florida as provided by section 196.031. While the "statute clearly prohibits an individual from receiving two residency-based tax credits," Wells v. Haldeos, 48 So. 3d 85, 86 (Fla. 2d DCA 2010), it in no way dictates the remedy or sanction that results when a person is

found to be in violation of it.[4]  And simply because section 196.031(5) does not reference section 196.161(1)(b) does not mean, as the Fittses contend, that the sanctions set forth in section 196.161(1)(b) were not intended to apply to the property of persons in violation of section 196.031(5).  Based on a plain language analysis, relevant case law, and to the extent necessary, canons of statutory construction and legislative history, we believe the circuit court correctly determined that section 196.161(1)(b) is applicable to the Fittses' property, though harsh as it may be.  See Bystrom v. Diaz, 514 So. 2d 1072, 1074 (Fla. 1987) ("Although [the tax statutes] appear to be somewhat harsh, their meaning is clear."); see also Reinish v. Clark, 765 So. 2d 197, 209 (Fla. 1st DCA 2000) ("[I]nequalities that result not from hostile discrimination, but occasionally and incidentally in the application of a [tax] system that is not arbitrary in its classification, are not sufficient to defeat the law." (alterations in original) (quoting Maxwell v. Bugbee, 250 U.S. 525, 543 (1919))).

We, like the circuit court, are sympathetic to the Fittses.  There is a tax lien on their Sarasota County home for back taxes, penalties, and interest due to an error on the part of a third party in another state that apparently went undetected by the Fittses until they received the notice from the Property Appraiser.  The tax credit they received in Ohio was negligible compared to the sanctions they now face.  But the remedy for this shortcoming "lies with the legislature, not the courts."  Mitchell, 61 So. 3d at 1156; see also State v. C.M., 154 So. 3d 1177, 1180-81 (Fla. 4th DCA 2015) ("Until that is effectuated by the legislature, we are bound to the letter of the law and 'must apply a

---

[4]The parties have not cited and we have not found any other statutory provisions which might provide the appropriate sanction or remedy in this case.

- 14 -

statute as [we] find it, leaving to the legislature the correction of assorted inconsistencies and inequalities in its operation.' " (alteration in original) (quoting <u>Guilder v. State</u>, 899 So. 2d 412, 419 (Fla. 4th DCA 2005))).  And thus we encourage the legislature to amend the statutes if it does not intend the lien and penalties of section 196.161(1)(b) to apply in cases like the Fittses'.[5]

"Because we are bound by the law[s] as [they were] passed by the legislature and not allowed to add language to or fill gaps in the statute[s]," <u>C.M.</u>, 154 So. 3d at 1181, we are compelled to affirm.

_____

[5]We note that the Florida Senate and the Florida House of Representatives proposed related bills during the 2019 Regular Session that may have addressed the situation before us.  Senate Bill 856 and House Bill 1151 proposed amendments to section 196.031(5), including renumbering the statute to include subsections (a) and (b), with subsection (a) providing as follows:

> (5)<u>(a)</u> A person <u>or family unit</u> who is receiving or claiming the benefit of an ad valorem tax exemption or a tax credit in another state where permanent residency is required as a basis for the granting of that ad valorem tax exemption or tax credit is not entitled to the homestead exemption provided by this section, <u>unless the person or family unit receiving the ad valorem tax exemption or tax credit in another state demonstrates to the satisfaction of the property appraiser that the person or family unit did not apply for the exemption or credit and that the person or family unit has relinquished the exemption or credit in the other state</u>.

Fla. CS for SB 856, § 1 (2019) (proposed amendment to FLA. STAT. § 196.031(5)); Fla. CS for HB 1151, § 1 (2019) (proposed amendment to FLA. STAT. § 196.031(5)).  Here, it is undisputed that the Fittses did not apply for the exemption in Ohio and that they have relinquished the exemption in that state.  Thus, it is quite possible that they could have demonstrated to the satisfaction of the Property Appraiser that they did not apply for the exemption in Ohio and that they relinquished the exemption in Ohio such that they would not be "person[s] who [were] not entitled to a homestead exemption [but] w[ere] granted a homestead exemption" subject to the penalties set forth in section 196.161(1)(b).  Unfortunately, both bills were indefinitely postponed and withdrawn from consideration.

Affirmed.


VILLANTI and MORRIS, JJ., Concur.